

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **REXAM BEVERAGE CAN COMPANY**, a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 06 C 2234 |
| v. | ) ) ) | Magistrate Judge Martin C. Ashman |
| **DAVID F. BOLGER as TRUSTEE of THE DAVID F. BOLGER REVOCABLE TRUST**, a Florida resident, and **CITY OF FAYETTE, IOWA**, an Iowa municipal corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter is before this Court on the motion of defendants David F. Bolger, et al. ("Defendants"), for summary judgment. The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(a). For the reasons that follow, the Court grants Defendants' motion for summary judgment.

### I. **Background**

This dispute centers around the lease of an industrial warehouse and manufacturing facility located in Loves Park, Illinois. (Def.'s Mem. at 3.) Defendants, who own this facility,[1]

---

[1] The facility is owned by the David F. Bolger Revocable Trust and the City of Fayette, Iowa. Bolger is the trustee of the revocable trust and is the authorized representative of Fayette.
(continued...)

have leased this property to various tenants since 1966, and possession of the facility passed through several successors in interest to the 1966 lease. Most recently, plaintiff Rexam Beverage Can Company ("Plaintiff") has been in possession of the facility under the terms of the 1966 lease.

The 1966 lease provides that the tenant has the option to renew the lease for successive five-year terms, provided that the lessee "was not in default of the terms of the Lease at the time of the renewal." (*Id.*) The lease specifies that the tenant may exercise this option to renew by providing notice to Defendants not less than 180 days prior to the termination of the lease period. Specifically, the lease states that "[t]he right to extend the term of this Lease for each such renewal period shall be exercised by giving written notice to Lessor not less than 180 days prior to the expiration of the term then in effect." (Pl.'s Resp. at 3.) Here, the lease term that governed Plaintiff's possession of the facility ended on March 31, 2006, which means that in order to timely exercise its option to renew the lease for another five-year term, Plaintiff was required to notify Defendants by October 2, 2005.

The parties do not dispute that Plaintiff did not exercise its option to renew by October 2, 2005. On December 29, 2005, Plaintiff contacted Defendants by letter and attempted to renew its lease for a subsequent term. Defendants' representative, i.e., Bolger, received Plaintiff's letter. At that time, Bolger did not reject Plaintiff's notice of renewal as untimely. According to

---

[1](...continued)
(Bolger Decl., ¶ 1.) For clarity, the Court simply refers to these parties collectively as "Defendants."

Defendants, at the time Bolger received the December 29 notice he did not realize that this notice was untimely.

Bolger responded to the December 29 notice by sending a letter on January 6, 2006 to Plaintiff. This January 6 letter indicated that Bolger was concerned that the leased facility might be improperly maintained in violation of the lease's terms and that Bolger wanted to arrange an inspection of the facility. Bolger's January 6 letter stated, "This letter should confirm the receipt of your renewal notice, subject to Rexam being in full compliance with the terms and conditions of the lease."[2] (Def.'s Mem. at 4.)

On January 16, 2006, Brian Clancy, an attorney representing Plaintiff, sent a letter to Bolger. This January 16 letter thanked Bolger for "acknowledging Rexam Beverage Can Company's right and option to extend the [lease's] term." (*Id.*) The letter went on to say, "Your letter did not include an acknowledgment of this exercise by returning a signed copy of that exercise notice. Please be so kind as to send back to us by fax and mail a signed copy of that exercise." (*Id.*) Bolger responded to this letter on January 23, 2006 by letter stating that "[t]he failure to return the Notice of Renewal was not an oversight on my part. See the last sentence of my letter of January 6, 2006 in which I state 'Subject to Rexam being in full compliance with the terms & conditions of the lease.'" (*Id.*)

On February 16, 2006, Clancy sent an e-mail to Bolger's office saying, "David [Bolger] has to date not acknowledged that Rexam has exercised their [sic] right to this five (5) year

---

[2] Presumably, as later correspondence assumes, Bolger's letter conditioned "acceptance" of the renewal on compliance with the lease terms, as no party ever disputed the date of receipt.

option and we would like to settle this matter now as Rexam feels it has exercised the option and is in compliance with their lease. Please let me know [Bolger's] response." (Def.'s Mem. at 4-5.)

During the time of this dialogue between Plaintiff and Defendants (specifically Bolger), the parties were in communication surrounding any repairs that were to be done on the leased facility, which were required by the lease and referenced in Bolger's January 6 letter. Apparently, Plaintiff gave Bolger some indication that it would complete specified repairs to the facility. Regarding these repairs, Bolger represented to Plaintiff that Plaintiff could refrain from engaging in these repairs until warmer weather permitted.

At the end of February, Bolger expressly rejected the notice of renewal as untimely. Bolger sent a letter to Clancy on February 27, 2006, in which Bolger expressly rejected Plaintiff's renewal notice as being untimely. This letter stated the following:

> Rexam had a due date ending in August 2005 to exercise its options. Having failed to do so on a timely basis, this letter is to advise you accordingly that Rexam's lease shall expire and shall be null and void on March 31, 2006. Rexam should take the necessary steps to surrender the facility with all goods and materials removed.

(Def.'s Mem. at 5.) Following March 31, 2006, and up to the present, Plaintiff has taken no steps to vacate the leased premises. Plaintiff brought this suit asking the Court to declare the rights and obligations of the parties with respect to the lease.

Defendants' motion for summary judgment argues that Plaintiff's renewal of the lease was untimely, and that under Illinois law it was therefore ineffective. Defendants also argue that their words and conduct surrounding the renewal did not waive their rights that they have as a result of any untimely notice of renewal. Because the late renewal was ineffective to renew the lease, Plaintiff is a holdover tenant as of March 31, 2006, Defendants argue, and because Plaintiff's

holding over is willful, Defendants are entitled to twice the market value of rent for the holdover period, per Illinois law. As the Court discusses below, the Court grants Defendants' motion.

## II. <u>Discussion</u>

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, the Court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Dribeck Importers, Inc. v. G. Heileman Brewing Co.*, 883 F.2d 569, 573 (7th Cir. 1989). In deciding a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Regner v. City of Chi.*, 789 F.2d 534, 536 (7th Cir. 1986).

Initially, the Court notes that this matter is appropriate for summary judgment treatment. As Plaintiff points out, key questions at issue in this motion—whether Plaintiff is a holdover tenant and, if so, whether Plaintiff's holding over was willful—are questions of fact. (Pl.'s Resp. at 5 (citing *J.M. Beals Enterps., Inc. v. Industrial Hard Crome, Ltd.*, 271 Ill. App. 3d 257, 260, 48 N.E.2d 249 (App. Ct. 1995)). Nevertheless, this "does not mean that [these issues] may never be decided by summary judgment." *J.M. Beals Enterps.*, 271 Ill. App. 3d at 260, 48 N.E.2d 249. Where the material facts are not in dispute, or where the disputed facts, viewed in a light most favorable to the non-movant, do not support the non-movant's claim, summary judgment may be

appropriate, even where factual issues are involved. As the Court discusses below, the undisputed facts viewed in a light most favorable to Plaintiff warrant summary judgment in Defendants' favor. In short, the mere fact that the issues in this case involve factual questions does not prevent this Court from granting Defendants' motion.

### B. Untimely Renewal

The Court first addresses whether Plaintiff is a holdover tenant as a result of its untimely renewal notice. Underlying this issue is the question whether the 1966 lease expired by the fact of Plaintiff's failure to give timely notice, or whether the lease did not expire either because Bolger did not immediately reject the notice as untimely or because Bolger—on behalf of Defendants—waived Defendants' rights to treat Plaintiff as a holdover tenant upon the expiration of the lease. As stated above, both parties agree that the renewal, to be timely, must have been given to Defendants by October 2, 2005. Both parties also agree that the renewal notice was not given to Defendants until December 29, 2005. Under Illinois law, "a lessee seeking to exercise an option to cancel or extend a commercial lease must strictly comply with the terms of that option." *Thomson Learning, Inc. v. Olympia Props., LLC*, 365 Ill. App. 3d 621, 627, 850 N.E.2d 314 (App. Ct. 2006). Illinois law is unequivocal on this point. *See id.* (rejecting the argument that "something less than strict compliance with the terms of an option to cancel or extend a commercial lease is sufficient to exercise that option"); *LaSalle Nat'l Bank v. Graham*, 119 Ill. App. 3d 85, 86, 456 N.E.2d 323 (App. Ct. 1983) ("Where the only condition of such a right to renew is that it be exercised within the time specified by the parties, a court will strictly construe the time requirement and enforce the agreement of the parties.").

Because Plaintiff did not timely submit its notice of renewal, the lease expired on March 31, 2006. The *Thomson Learning* court cited numerous cases that upheld this strict compliance rule, and Plaintiff has given no case that shows that the standard for effectively exercising an option to renew a commercial lease is anything other than strict compliance. The 1966 lease contains clear, unambiguous terms that restrict the window in which the tenant can renew the lease to a period not later than 180 days prior to the lease term's end. Both parties agree that no notice was sent to Defendants until December 29, 2005, past 180 days prior to March 31, 2006. Because Plaintiff sent the notice after October 2, 2005, the Court need not engage in any more extensive analysis than to find that Plaintiff did not comply with the lease's terms. Because the renewal was untimely, Plaintiff's lease was not renewed for a subsequent five-year term, and the lease terminated on March 31, 2006.

Throughout Plaintiff's brief, Plaintiff appears to suggest that its renewal was timely because Bolger did not reject the notice as untimely until February 27, 2006. (*See, e.g.*, Pl.'s Resp. at 5 ("While it is true that [Plaintiff] did not exercise this option 180 days prior to the expiration of the lease period, Defendants did not initially reject the notice as being untimely.")). Implied in these suggestions is that, in order to be ineffective in renewing the lease, the notice of renewal must be rejected by Bolger. The Court rejects this reasoning. Illinois law makes clear that strict compliance is required to exercise the option to renew. With this in mind, the fact that Bolger did not explicitly reject the notice of renewal as untimely when he first received the notice is of little moment. Strict compliance requires Plaintiff to submit the notice timely, and it does not require an additional act by Bolger to make the late notice ineffective. Plaintiff's renewal was

late, and it was ineffective even though Bolger did not reject it as untimely until late February 2006.

Plaintiff also suggests that "[a]t the time [Plaintiff] exercised its option to extend the lease, it was entitled to do so as it was not in default of any of its obligations." (*Id.*) Plaintiff misunderstands what is required in the lease. Assuming that Plaintiff is not in default as to any of its obligations under the lease,[3] Plaintiff has not complied with the lease's mechanism for exercising its option to renew the lease. The Court's determination that the notice of renewal was untimely does not rest on any determination that Plaintiff was or was not in default of any lease terms (other than the terms surrounding lease renewal). Not being in default of any of the lease terms is only one part of what the lease requires for renewal; timely renewal is also required, and the renewal in this case was not timely. Thus, after October 2, 2005, Plaintiff was not entitled to renew the lease.

Thus, Plaintiff's renewal notice was ineffective to renew the lease to a new term.

### C. Waiver

Plaintiff argues that, even though its attempted exercise of the renewal was untimely, Defendants waived any claim they had as to Plaintiff's being a holdover tenant. For this reason, Plaintiff suggests, Plaintiff was rightfully in possession of the facility subsequent to March 31, 2006. Courts in Illinois have defined waiver as "the intentional relinquishment of a known right." *Ryder v. Bank of Hickory Hills*, 146 Ill.2d 98, 104-05, 165 Ill. Dec. 650, 585 N.E.2d 46

---

[3] The Court makes no determinations as to whether Plaintiff fulfilled all of the lease terms, such as its duty to maintain the premises, etc.

(1991). Waiver may either be expressed or implied. Here, Plaintiff does not suggest that Defendants expressly waived their right to pursue their claims against Plaintiff; inasmuch as Bolger made any statements that might indicate that Defendants intended to treat the lease as renewed, Plaintiff uses these statements to argue Defendants impliedly waived their rights.

In the implied waiver context, *Ryder* articulates the standard for determining whether conduct evinces an "intentional relinquishment of a known right." Under *Ryder*, the inquiry involves two aspects: first, Plaintiff must be able to show that Defendants knew of their right to treat Plaintiff as a holdover tenant; and second, Plaintiff must be able to show that Defendants acted in a way that manifested an intention to waive that right. *Ryder* framed the issue this way: "Implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Id.* at 105, 165 Ill. Dec. 650, 585 N.E.2d 56 (citations omitted). *Ryder* also stated that "[a]n implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it." (*Id.* (quoting *Kane v. American Nat'l Bank & Trust Co.*, 21 Ill. App. 3d 1046, 1052, 316 N.E.2d 177 (App. Ct. 1974)).

The Court first considers whether Defendants knew of their right to treat Plaintiff as a holdover tenant. The parties dispute whether Bolger was aware of Defendants' right to hold Plaintiff as a holdover tenant at the time that he received the renewal notice from Plaintiff in December 2005. Defendants state that, at the time Bolger received the renewal notice, he was not aware that the notice was untimely, and that he withheld acceptance of Plaintiff's renewal solely in order to arrange an inspection of the facility to determine compliance with the lease's

- 9 -

terms. (Def.'s Mem. at 3.) Plaintiff argues that Defendants' statement that Bolger was unaware of the notice's untimeliness is disingenuous. Plaintiff points to Bolger's actions after receiving the renewal notice, which include Bolger's statements that the renewal would be accepted pending fulfillment of other lease obligations, as well as Plaintiff's and Bolger's ongoing discussions about the repairs to the facility. (Pl.'s Resp. at 6-7.)

Thus, a factual question exists as to whether Bolger actually realized that the notice was late. Despite this factual question a to Bolger's actual knowledge, the Court believes that Bolger is charged with recognizing that the late renewal notice was untimely. Plaintiff argues that Bolger is charged with knowledge of the untimeliness of the renewal notice—and hence Defendants' right to treat Plaintiff as a holdover tenant—by virtue of his signing the lease on behalf of Defendants. Plaintiff cites *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992), for the proposition that a person who signs a contract is presumed to know that contract's terms. Because Bolger signed the lease agreement on behalf of Defendants, Bolger is constructively knowledgeable of the lease's contents, regardless of whether Bolger actually had the notice of renewal provision in mind as of December 2005, and regardless of whether Bolger only recognized the lateness of the renewal notice in February 2006.

In light of this constructive notice of the lease's provisions, the Court considers *Indianapolis Life Insurance Co. v. Lucky Stores, Inc.*, No. 90 C 2675, 1993 U.S. Dist. LEXIS 10777 (N.D. Ill. July 29, 1993). *Indianapolis Life Insurance Co.* stated that "[k]nowledge of the essential and material facts constituting a breach is the only knowledge a party against whom waiver is asserted needs." *Id.* at *27 (citations omitted). The court also stated that "[k]nowledge of the 'essential and material facts' is established for purposes of waiver not only where a party

knows of such facts but also where he *should have known* of them." *Id.* (citations and internal quotations omitted; emphasis in original). In light of Bolger's constructive knowledge of the lease's contents and the rule in *Indianapolis Life Insurance Co.*, the Court finds that Bolger was constructively aware of the lateness of the notice. For these reasons, Defendants are charged with knowing of their right to treat Plaintiff as a holdover tenant.

Even though Defendants knew of their right to treat Plaintiff as a holdover tenant, waiver also requires Defendants to take actions that demonstrate their intent to relinquish that right. The undisputed facts do not indicate that Defendants have taken any kind of "clear, unequivocal, and decisive act" that would support a finding of waiver. The facts indicate the opposite—Bolger's words and conduct since receiving the notice of renewal indicate that he did not accept the late renewal. Bolger's initial, January 6 response letter acknowledged only that he received the notice of renewal, not that he accepted it: "This letter should confirm the receipt of your renewal notice, subject to Rexam being in full compliance with the terms and conditions of the lease." (Def.'s Mem. at 4.) Thus, Bolger's confirmation of receipt was conditioned on Plaintiff being in compliance with the lease terms. It was not acceptance of the renewal. Clancy's letter to Bolger ten days later noted that Bolger had not acknowledged the notice of renewal by signing a copy of the notice, and Clancy requested this signed copy. Bolger responded on January 23 by stating that his "failure to return the Notice of Renewal was not an oversight on my part." (*Id.*) Bolger then referenced his statement that his acceptance was conditioned on Plaintiff's compliance with the lease terms. One of the lease terms was the timing of the notice.

This correspondence demonstrates not that Bolger's actions evidenced an intent to accept the late notice, but that he had explicitly refused to accept the notice of renewal. None of this

correspondence indicates that Bolger made a clear, unequivocal, decisive act disavowing Defendants' rights. If anything, this correspondence demonstrates that Bolger was not relinquishing any rights, and by withholding acceptance Bolger demonstrated that he was reserving any right he might have to opt out of renewing the lease, specifically if the lease terms were not met. The fact that Bolger may have withheld acceptance in order to determine if lease terms were met, and not because of the untimeliness of the notice, is irrelevant because the timing of the notice was part of the lease terms. In any event, Bolger's actions and statements do not support a waiver.

Indeed, further correspondence from Clancy demonstrates that even Clancy did not believe that Bolger had accepted the renewal. Clancy's e-mail to Bolger's office demonstrates that, through mid-February, Plaintiff did not believe that the late renewal was accepted: "[Bolger] has to date [February 16, 2006] not acknowledged that Rexam has exercised their [sic] right to this five (5) year option and we would like to settle this matter now as Rexam feels it has exercised the option and is in compliance with their lease. Please let me know [Bolger's] response." (Def.'s Mem. at 4-5.) This evidence that even Plaintiff did not believe that Bolger had accepted the renewal only reinforces the Court's belief that Bolger's statements did not constitute a clear, unequivocal, decisive act disavowing Defendants' rights.

Plaintiff also argues that other actions by Defendants waived their claim to treat Plaintiff as a holdover tenant. Plaintiff suggests that Defendants led Plaintiff to believe that Defendants would accept the late renewal if necessary repairs were done to the facility. Plaintiff points out that Bolger's initial response seemed to indicate that the lease could be renewed if Plaintiff makes necessary repairs. Plaintiff and Bolger then arranged for an inspection of the facility in order to

determine what repairs were needed, around which time Bolger represented to Plaintiff that Plaintiff could wait until warmer weather before performing the repairs. Plaintiff argues that these negotiations and representations constitute Bolger's acceptance of the late renewal notice. (Pl.'s Resp. at 7.) In support of this argument, Plaintiff quotes *Indianapolis Life Ins. Co.*, 1993 U.S. Dist. LEXIS 10777, at *27-*28 ("To establish an intentional relinquishment of a known right, it is not necessary to prove an expressed intention to relinquish the right. Rather, conduct inconsistent with the assertion of the right is sufficient."). (*See also* Pl.'s Resp. at 7 ("Any act of a landlord which affirms the existence of a lease and recognizes a tenant as his lessee after the landlord has knowledge of a breach of the lease results in the landlord's waiving his right to forfeiture of the lease . . . Simply put, evidence of acts inconsistent with a declaration of a termination of the lease may prove waiver of the breach.") (quoting *Midland Mgmt. Co. v. Helgason*, 158 Ill.2d 98, 196 Ill. Dec. 671, 630 N.E.2d 836 (1994))).

The Court does not believe that *Indianapolis Life Insurance* and *Midland Management* support Plaintiff. Initially, the Court notes that *Midland Management* involved a landlord who accepted rent on behalf of a tenant after that tenant's lease term expired. The court held that the landlord's acceptance of the rent waived the landlord's right to hold the tenant as a holdover tenant, because the landlord's acceptance of the rent constituted a waiver of the landlord's known right. In other words, this case stands for the fundamental rule that a landlord treating a tenant under an expired lease as a holdover tenant may not elect also to accept rent from the tenant. The Court does not believe that *Midland Management* allows the Court to define the waiver standard as anything less than an intentional relinquishment of a known right, manifested in a deliberate act.

Moreover, the Court need not in this instance reconcile any difference between the "deliberate, intentional act" standard and the "inconsistent act" standard articulated in *Indianapolis Life Insurance*. Even under the *Indianapolis Life Insurance* formulation, Plaintiff has not demonstrated that Defendants' actions were inconsistent with maintaining its right to hold Plaintiff as a holdover tenant. Fundamentally, Bolger's allowing Plaintiff to wait for the onset of spring before undertaking any needed repairs is not in any way inconsistent with the termination of the lease because the tenant's obligation to repair the premises survives the termination of the lease. In other words, Plaintiff had an obligation to perform needed repairs under the lease regardless of whether the lease was renewed or terminated. The mere fact that Bolger allowed Plaintiff to wait until spring is not inconsistent and does not support Plaintiff's argument.

In addition, the Court notes that the parties' correspondence likewise does not support Plaintiff's argument. As the Court has stated, Bolger's correspondence indicates that Defendants did not accept the new lease term. Notably, the lease contains a provision indicating that any delay in the parties' exercising their rights under the lease is not to be taken as a waiver of those rights. In light of this lease provision, the fact that Bolger did not identify the renewal notice as untimely until February 2006, but instead communicated with Plaintiff in order to coordinate an inspection and time period for needed repairs, did not operate to waive Defendants' rights. Under any formulation of the waiver standard, Defendants have not waived their rights.

Plaintiff also argues that Illinois law does not permit Defendants to "induce [Plaintiff] into believing that [it] would be permitted to remain in the rented premises for a period beyond the lease term, then arbitrarily and capriciously change their minds, and then seek holdover damages." (Pl.'s Resp. at 8 (citing *Kenwood Hotel Co. v. Hiland*, 153 Ill. App. 108 (App. Ct.

1910)). Plaintiff essentially argues that Bolger's actions and representations lulled Plaintiff into believing that Plaintiff would be able to renew the lease, notwithstanding any lateness. The Court easily dismisses this argument. In addition to the fact that Bolger's correspondence consistently demonstrates that Defendants did not accept Plaintiff's renewal, Clancy's e-mail, as discussed above, demonstrates that Plaintiff itself did not believe that Bolger made such overtures. In light of the absence of any inducement, the Court rejects this argument.

For these reasons, the Court holds that Defendants have not waived their right to treat Plaintiff as a holdover tenant.[4]

### D. Willfulness

Because Plaintiff is a holdover tenant, Defendants argue that Plaintiff's ongoing possession—Plaintiff's holding over—of the facility is willful, and that Defendants are entitled to recover "the rate of double the yearly value of the lands." (Def.'s Mem. at 6-7 (citing 735 Ill. Comp. Stat. 5/9-202).) Illinois law states that if a tenant

> willfully holds over . . . after the expiration of his or her term or terms, and after demand made in writing, for the possession thereof, by his or her landlord, . . . the

---

[4] Plaintiff briefly suggests that the correspondence between Bolger and Plaintiff constitutes negotiation for renewal of the lease, and that Plaintiff therefore cannot be treated as a holdover tenant. (Pl.'s Resp. at 8 ("When a tenant remains in possession and continues to pay rent after the expiration of his lease, but at the same time carries on negotiations with the lessor for a new lease, such negotiations negate the possibility of any acquiescence or election by the lessor to create a holdover tenancy." (quoting *Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.*, 137 Ill. App. 3d 550, 561, 484 N.E.2d 1178 (App. Ct. 1985)).) *Ebert* is inapposite. Bolger and Plaintiff did not carry on negotiations after the expiration of the lease. Even assuming that the arrangement of the inspection and Bolger's refusal to acknowledge the lease renewal constitute negotiations for a new lease, the indisputable fact is that the lease did not end until March 31, 2006. Negotiations prior to the termination of the lease cannot strip the landlord of his remedies in treating the tenant as a holdover tenant. The Court rejects Plaintiff's argument.

person so holding over, shall, for the time the landlord or rightful owner is so kept out of possession, pay to the person so kept out of possession, or his or her legal representatives, at the rate of double the yearly value of the lands, tenements or hereditaments so detained to be recovered by a civil action.

735 Ill. Comp. Stat. 5/9-202. *J.M. Beals* specifies that, like the issue of whether a tenant is a holdover tenant, the issue of whether a tenant's holding over is willful is a question of fact. Also like the issue of whether a tenant is a holdover tenant, the issue of willfulness may nonetheless be decided by summary judgment where the facts alleged present no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *J.M. Beals Enterps., Inc.*, 271 Ill. App. 3d at 260, 648 N.E.2d 249.

Generally, in order to be willful, the tenant holding over must know that its holding over is wrongful. *Id.* at 261-62, 648 N.E.2d 249. With this in mind, the mere fact that a tenant remains in possession after the termination of a lease does not necessarily mean that the holding over is willful: "where a tenant remains in possession for colorably justifiable reasons, he should not be charged under the statute." *Id.* at 261, 648 N.E.2d 249.

In light of the Court's conclusions above, the Court is convinced that Plaintiff's holding over is willful. As the Court has elaborated above, Plaintiff was aware that its retention of the property after the termination of the lease was wrongful. This much is clear from the correspondence between Bolger and Plaintiff. Bolger's letters never accepted the renewal but instead withheld acceptance and the renewal of the lease. If Bolger's rejection of the renewal was not clear before, Bolger explicitly notified Plaintiff on February 27, 2006 that Defendants rejected the notice of renewal as untimely. Bolger's February 27 letter went on to state that Defendants intended to retake possession of the facility at the end of March 2006 at the lease's

termination. The letter stated that Plaintiff had one month to vacate the premises. Plaintiff received this letter and was therefore aware that its retention of the property after March 31, 2006 would be wrongful. Plaintiff nonetheless retains possession to this day. This is a clear example of willfulness.

Furthermore, Plaintiff cannot claim that it had a colorably justifiable reason for retaining possession of the property. As discussed above, Illinois law is clear that renewal options require strict compliance. Plaintiff did not comply with the lease's notice of renewal requirements. And, as outlined above, Plaintiff itself did not believe that its notice of renewal was effective, as was indicated by Clancy's e-mail to Bolger. Because Plaintiff did not believe that Bolger or Defendants had accepted the renewal, and because Defendants notified Plaintiff well in advance of the lease's termination that Plaintiff was required to vacate the facility, Plaintiff cannot claim that its retention of the facility was anything other than willful, and nothing convinces the Court that Plaintiff had a colorably justifiable reason for remaining in possession.

For these reasons, the Court holds that Plaintiff's holding over was willful, which entitles Defendants to twice the market value of the facility under Illinois statute. The question of the value of the land (and double the value of the land) is not addressed in this summary judgment. Therefore, this order does not determine it.

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment on liability. The question of damages is set for status on August 22, 2007, at 10:00 a.m.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: July 24, 2007.

Copies have been mailed to:

| | |
|---|---|
| BARRY I. MORTGE, Esq. | ANTHONY E. DOWELL, Esq. |
| Cohen, Salk & Huvard, P.C. | GEOFFREY A. BAKER, Esq. |
| 630 Dundee Road | JENNIFER A. LLOYD, Esq. |
| Suite 120 | Dowell Baker, P.C. |
| Northbrook, IL 60062 | 201 Main Street |
| | Suite 710 |
| | Lafayette, IN 47901 |
| Attorneys for Plaintiff | Attorneys for Defendants |