MHN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REXAM BEVERAGE CAN COMPANY, a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 06 C 2234 |
| v. | ) ) ) | Magistrate Judge Martin C. Ashman |
| DAVID F. BOLGER as TRUSTEE of THE DAVID F. BOLGER REVOCABLE TRUST, a Florida resident, and CITY OF FAYETTE, IOWA, an Iowa municipal corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is a motion by David F. Bolger and the City of Fayette, Iowa, ("Defendants") to set a termination date for the holdover tenancy of Plaintiff, Rexam Beverage Can Company ("Rexam"), on Defendants' premises. The issue before the Court is narrow: on what date did Rexam's holdover tenancy end? At oral argument on January 10, 2008, the parties agreed that this motion should be treated as a motion for summary judgment on this issue. For the reasons discussed below, the Court finds that the termination date of Rexam's holdover tenancy was August 31, 2007.

### I. Factual Background

The Court set out the facts of this case in detail in its Memorandum Opinion and Order of July 24, 2007, granting Defendants' motion for summary judgment. *See Rexam Beverage Can*

*Co. v. Bolger*, No. 06 C 2234, 2007 WL 2156674, at *1-2 (N.D. Ill. July 24, 2007). The basic facts of the case are as follows: Rexam was a tenant in a manufacturing facility owned by Defendants in Loves Park, Illinois. *Id.* at *1. Under the lease agreement, Rexam was required to provide notice of its decision to renew the lease at least 180 days before the expiration date of the lease. *Id.* In late 2005, Rexam notified Defendants that it wished to renew the lease, which was set to expire on March 31, 2006. *Id.* Rexam's notice was untimely. *Id.* Defendants rejected Rexam's notice of renewal and instructed Rexam to surrender the facility on March 31, 2006. *Id.* at *1, 2. Rexam took no steps to vacate the premises, instead filing a lawsuit in state court seeking a declaratory judgment defining the rights and obligations of the parties to the lease. *Id.* at *2. Defendants removed the case to this Court. After the parties consented, pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1(a), to have this Court conduct any and all proceedings in the case, Defendants filed a motion for summary judgment. *Id.* This Court granted Defendants' motion, finding that Rexam had willfully held over and occupied the premises after the termination of the lease. *Id.* at *8. The Court held that, under Illinois law, Defendants were entitled to double rent for the duration of the willful holdover tenancy. *Id.*

Now Defendants have filed a motion asking the Court to determine the end date of Rexam's holdover tenancy. This is a factual question, as is the question of whether Rexam's holdover tenancy ceased to be "willful" at any point prior to the date on which Rexam's occupancy ended. *See Rexam*, 2007 WL 2156674, at *3. Only the first issue—the date of termination—is properly before the Court on Defendants' motion. The parties appear to be in substantial agreement as to the relevant facts, but disagree about their legal consequences.

Rexam argues that the appropriate termination date is March 5, 2007, the date that Rexam's then-attorney sent a letter to counsel for Defendants stating that "I have been advised by my client that Rexam will be vacating the Loves Park facility as of March 23, 2007." (Defs.' Br., Ex. 2.) At oral argument, Rexam argued that this letter constituted a tender of possession effective March 23, 2007. Rexam points to correspondence from Defendants demanding that Rexam make certain repairs to the premises as evidence that Defendants refused to take possession. (Pl.'s Br. at 10-12.) While it acknowledges that the key to the facility was not made available to Defendants until August 31, 2007, Rexam appears to argue that it should not be held responsible for Defendants' intransigent refusal to accept possession of the property. Because Rexam offered to vacate the premises on March 23, 2007, only to be rebuffed, Rexam believes that its holdover tenancy should be deemed to end on that date.

Defendants argue that, in light of custom and usage in the marketplace for "long term triple-net leases," Rexam was obligated to enter into a formal termination agreement in order to end its tenancy. (Defs.' Br. at 3.) Alternatively, Defendants rely on Illinois landlord-tenant law for the proposition that "surrender of possession under a lease must be by mutual agreement." (*Id.*) Because there has been no such agreement between the parties, Defendants maintain that Rexam's holdover tenancy is ongoing and ask the Court to enter an order stating that Rexam's tenancy will be terminated two weeks from the order date.

## II. Discussion

In ruling on this motion, the Court must make three determinations. First, which set of legal rules governing the relationship between landlord and tenant applies to the instant case?

Next, under the applicable rules, what act is necessary in order to terminate a holdover tenancy? Finally, on what date did the necessary act occur, if it occurred at all?

### A. Applicable Law

The question of what set of rules to apply is easily answered. This Court has already ruled, in deciding Defendants' motion for summary judgment, that Rexam is (or was at the time of the Court's decision) a holdover tenant. Under Illinois law, "[a] tenant who remains in possession after his or her lease has expired becomes a tenant at sufferance." *Roth v. Dillavou*, 359 Ill. App. 3d 1023, 1027, 835 N.E.2d 425, 429 (2005). The landlord may elect to hold the tenant who remains in possession to another lease term under the provisions of the original lease. *Bransky v. Schmidt Motor Sales, Inc.*, 222 Ill. App. 3d 1056, 1061, 584 N.E.2d 892, 895 (1991). In this case, Defendants have rejected this option. Therefore, Rexam's interest in the property after the expiration of the lease was "naked possession" alone; there was no longer any privity between Rexam and Defendants. *Roth*, 359 Ill. App. 3d at 1027, 835 N.E.2d at 429. For this reason, Defendants' argument that "surrender of possession under a lease must be by mutual agreement" is beside the point: Rexam ceased to be "under a lease" when Defendants decided not to hold Rexam to another lease term and elected to treat Rexam as an unlawful occupant by seeking double rent under Illinois statutory law. Neither the default common law rules that apply when a lease exists nor the specific terms of the lease agreement between the parties regarding termination are relevant to the termination of this tenancy at sufferance.

## B. Termination of Tenancy at Sufferance

A tenancy at sufferance is created when a tenant unlawfully remains in possession of the premises after a lease expires or is terminated. *See Hoffman v. Altamore*, 352 Ill. App. 3d 246, 250, 815 N.E.2d 984, 988 (2004). As discussed above, "naked possession" is the hallmark of a tenancy at sufferance. *Roth*, 359 Ill. App. 3d at 1027, 835 N.E.2d at 429. For this reason, Illinois law is clear that a landlord may terminate a tenancy at sufferance at any time by evicting the possessor as a trespasser. *Meyer v. Cohen*, 260 Ill. App. 3d 351, 361, 632 N.E.2d 22, 29 (1993). Although it appears that Illinois courts have not specifically addressed the termination of a tenancy at sufferance by the tenant, it stands to reason that, because all the tenant has is naked possession, the tenant must relinquish possession and surrender the property in order to end the tenancy. In other words, if it is a failure to surrender the premises that creates a tenancy at sufferance, the tenant ends the tenancy at sufferance by (belatedly) surrendering possession. Therefore, the Court finds that, because the relationship between Defendants and Rexam was a tenancy at sufferance, the date of termination is the date that Rexam surrendered the premises by tendering possession to Defendants, regardless of whether Defendants accepted Rexam's tender.

## C. Date of Termination

As discussed above, once Defendants elected to treat Rexam as a tenant at sufferance, Rexam could terminate its tenancy by relinquishing control of the premises and tendering possession to Defendants. While Illinois case law is replete with references to "tender of possession," the parties have not provided, and the Court has not found, any Illinois cases that specifically describe what is necessary in order to make a valid tender of possession of real

property. Therefore, the Court will look to other areas of law in which the concept of "tender" is more fully developed and analogize to the present situation.

In the area of sales, the Illinois Uniform Commercial Code provides that "[t]ender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery." 810 ILCS 5/2-503(1). Discussing tender of payment, Illinois courts have emphasized that "[a] tender must be without conditions to which the creditor can have a valid objection." *Brown and Kerr, Inc. v. American Stores Properties, Inc.*, 306 Ill. App. 3d 1023, 1032, 715 N.E.2d 804, 812 (1999). In addition to the absence of conditions, Illinois courts have stated that a tender is characterized by a present readiness to do what is needed: "A tender is an offer to perform that which is required with the present ability to do so." *Yohnka v. Darling Nells, Inc.*, 136 Ill. App. 3d 309, 312, 483 N.E.2d 649, 651 (1985). From these statutes and cases, the Court concludes that in order to make a valid tender, one party must put the subject of the tender at the other's disposal, with no conditions other than those the parties have previously agreed to, so that it is immediately available. The focus is on the actions of the tendering party, not the party to whom the tender is made. *See Niemeyer v. Wendy's Int'l, Inc.*, 336 Ill. App. 3d 112, 115, 782 N.E.2d 774, 778 (2002) (discussing tender of payment of a judgment and holding that "the action of the judgment debtor in making the tender controls, not the judgment creditor's acceptance or rejection.").

Applying this rule to the facts of the case, the Court rejects Rexam's argument that its letter of March 5, 2007, was a tender of possession. Critically, the letter from Rexam's attorney states that Rexam "will be vacating" the premises on March 23, 2007. While the letter does not place any conditions on Rexam's decision to vacate, it fails as a tender of possession because it

does not immediately place the property at Defendants' disposal. Because the letter merely contemplates vacating the premises and making the property available to Defendants at some time in the future, it is best characterized as expressing an intent to make a tender of possession in the future. The Illinois Supreme Court has addressed the legal effect of such a communication, holding that "[t]here is no rule of law giving to a notice of intended tender the force and effect of an actual tender." *Ortman v. Kane*, 389 Ill. 613, 621, 60 N.E.2d 93, 97 (1945). In *Ortman*, the purchasers of a farm were required to pay the balance of the sale price by August 1. 389 Ill. 2d at 614, 60 N.E.2d at 94. Presumably concerned by the fact that the seller had been declared incompetent before the closing date, the purchasers served notice on the conservator of the seller's estate and the escrow agent on July 29 that they intended to pay the full purchase price on July 31. 389 Ill. at 615-16, 60 N.E.2d at 94-95. The *Ortman* court ruled that this notice was not a valid tender. Rexam's letter in this case is essentially the same, expressing an intent to make a tender in the future. Therefore, in accordance with the rule in *Ortman*, the letter of March 5, 2007, was not a proper tender of possession.

The Court also rejects Defendants' claim that Rexam's occupancy of the premises continues to this day because Rexam failed to give notice of its intent to terminate its tenancy or enter into a termination agreement with Defendants. As discussed above, when the lease expired and Defendants chose not to hold Rexam to another term, the lease agreement ceased to be in force and Rexam had only "naked possession." Therefore, even if the lease could be interpreted to require notice of termination or a termination agreement, those terms would not control in the present situation. Furthermore, it is undisputed that Rexam no longer physically possesses or occupies the premises. It appears that Rexam vacated the premises some time in August 2007;

the parties agree that Rexam sent an email to Defendants on August 31, 2007, stating that Rexam was surrendering the premises and that the key was available on Defendants' request from Rexam's agent. In the Court's view, this act, by which Rexam informed Defendants of their unconditional surrender and simultaneously made the property immediately available to Defendants by placing the key at their disposal, meets the requirements of a tender under Illinois law. The fact that Defendants rejected this tender is immaterial; Rexam's "naked possession" as a tenant at sufferance ended when Rexam vacated the premises and put the property at Defendants' disposal. Therefore, the Court finds that Rexam's tenancy at sufferance, which began when the lease expired on March 31, 2006, was terminated by their valid tender of possession to Defendants on August 31, 2007.

Rexam raises a number of arguments in its brief regarding the issue of willfulness. The Court determined in granting Defendants' motion for summary judgment that Rexam willfully overstayed its lease, entitling Defendants to rent at a rate equal to double the fair market rental value of the property pursuant to 735 ILCS 5/9-202. *Rexam*, 2007 WL 2156674, at *9. To the extent that Rexam challenges the merits of that finding, the Court finds that Rexam's arguments could and should have been made in defending against the motion for summary judgment. Therefore, there is no reason to reconsider the Court's finding that Rexam's holding over was willful. To the extent that Rexam is arguing that its continued occupancy of the premises ceased at some point to be willful due to various demands, representations, and refusals by Defendants, the Court finds that the issue is not properly before the Court at this time. While willfulness is a mixed question of fact and law that can be adjudicated on summary judgment, *see Rexam*, 2007 WL 2156674, at *3, the question whether Rexam's continued occupancy ceased to be willful has

not been fully briefed or squarely presented to be Court. Therefore, if Rexam wishes to have this question adjudicated, the issue should be raised in a separate motion for partial summary judgment, unless the parties agree that the Court should decide the issue on the papers that have already been filed. Otherwise, it will remain a factual issue for trial, to be decided together with the amount of damages.

### III. Conclusion

For the reasons set forth above, Defendants' motion to set a termination date for Rexam's holdover tenancy is granted. The Court finds that Rexam's tenancy was terminated on August 31, 2007.

**ENTER ORDER:**

*[signature]*

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: January 18, 2008.