REXAM BEVERAGE CAN COMPANY, )
a Delaware corporation, )
                        )
           Plaintiff, )     Case No. 06 C 2234
                        )
          v. )     Magistrate Judge
                        )     Martin C. Ashman
DAVID F. BOLGER as TRUSTEE of )
THE DAVID F. BOLGER REVOCABLE )
TRUST, a Florida resident, and CITY OF )
FAYETTE, IOWA, an Iowa municipal )
corporation, )
                        )
          Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Rexam Beverage Can Company ("Rexam"), was a tenant in a manufacturing facility in Loves Park, Illinois, owned by Defendants/Counterclaimants David F. Bolger, The David F. Bolger Revocable Trust, and The City of Fayette, Iowa (collectively, "Bolger"). On August 20, 2008, after a five-day bench trial, the Court entered a judgment in favor of Bolger in the amount of $1,582,008.24. $1,257,703.83 of this amount represented rent at double the fair-market rate as provided by the Illinois willful holdover statute, 735 ILCS 5/9-202, for Rexam's willful holdover tenancy from April 1, 2006, through August 31, 2007. $425,776.00 in damages was awarded for repairs to the facility's roof and dock levellers, which Rexam was required to maintain and repair under the lease between the parties.[1] Now before the Court is Bolger's

---

[1] The Court also found that Rexam was entitled to a setoff in the amount of $101,471.59, which was included in the calculation of the final judgment.

motion for attorneys' fees and costs. For the reasons set forth below, Bolger's motion is granted in part and denied in part.

## I. Attorneys' Fees and Nontaxable Expenses

The parties agree that in this case, where federal jurisdiction is based on diversity of citizenship, the rules of decision are provided by Illinois law. Under Illinois law, the general rule is that an unsuccessful litigant is not responsible the attorneys' fees of its opponent; contractual provisions providing for the payment of attorneys' fees are an exception to this rule and are therefore strictly construed. *See Abdul-Karim v. First Fed. Sav. & Loan Assoc. of Champaign*, 101 Ill. 2d 400, 411, 462 N.E.2d 488, 493 (1984) (losing party generally not liable for attorneys' fees); *J.B. Esker & Sons, Inc. v. Cle-Pa's P'Ship*, 325 Ill. App. 3d 276, 281, 757 N.E.2d 1271, 1276 (2001) (contractual attorneys' fees provisions must be strictly construed). Furthermore, because the contract at issue is a lease, any "doubt or uncertainty . . . should be construed against the lessor and in favor of the lessee." *Sears, Roebuck & Co. v. Charwil Assocs. Ltd. P'ship*, 371 Ill. App. 3d 1071, 1076, 864 N.E.2d 869, 874 (2007). Bolger argues that he is entitled to recover attorneys' fees and costs under three separate provisions of the lease. The Court considers each clause in turn.

### A. Article 9(a)

Article 9(a) of the lease, entitled "Indemnification by Lessee" provides, in relevant part:

> Lessee agrees to indemnify and save harmless Lessor . . . against
> and from any and all liabilities, losses, damages, costs, expenses,
> causes of action, suits, judgments and claims by or in behalf of any

- 2 -

> person, firm, corporation or governmental authority arising from
> the occupation, use, possession, conduct [. . .] or [any] thing
> whatsoever done in or about the Premises . . . during any term of
> this Lease . . . and against all liabilities . . . arising from any failure
> by Lessee to perform any of the agreements, terms, covenants or
> conditions of this lease . . . .

(Rexam Trial Ex. 1.) As the Court held in its August 20, 2008, decision, this is a comprehensive

indemnity clause that indicates an intent to do everything possible to mandate complete

compensation. *See* Memorandum Opinion and Order of August 20, 2008 at 26. Bolger's

argument is straightforward: because the indemnity clause is broad and mandates complete

compensation, Bolger is entitled to recover all of his legal expenses so that he will be made

whole and placed in the position that he would have been in absent Rexam's holdover tenancy

and failure to maintain the facility. Rexam argues that Bolger cannot recover any fees because

the language of Article 9(a) provides indemnity only for third-party claims based on acts that

occurred during the term of the lease.

The Court rejects Rexam's argument that Article 9(a) only provides indemnity for claims

by or liabilities to third parties. The plain language of Article 9(a) refers to "any and all"

liabilities, costs, and claims "by or in behalf of any person, firm, corporation or governmental

authority." (Rexam Trial Ex. 1.) On its face, this language would appear expansive enough to

include expenses incurred by Bolger in remedying wrongs committed by Rexam. Rexam does

not cite any Illinois precedent for its argument that indemnity clauses, as a matter of law, apply

only to third-party claims. The Court notes that the black letter definition of "indemnity" is "[a]

duty to make good *any* loss, damage, or liability incurred by another." Black's Law Dictionary

784 (8th ed. 2004) (emphasis added). And the Seventh Circuit, applying Illinois law, has stated

that "[a]n indemnity clause is designed to make the wronged party whole—to put it in the same

- 3 -

position it would have occupied had the other side kept its promise." *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 519 (7th Cir. 1999). This definition contains no suggestion that the harm indemnified against must involve a third party. Finally, this Court has previously rejected the argument that a similarly-worded indemnity agreement applied only to claims by third parties. *See Chamberlain Mfg. Corp. v. Maremont Corp.*, No. 92 C 0356, 1995 WL 769782, at *6 (N.D. Ill. Dec. 29, 1995). Therefore, the Court concludes that the plain language of the indemnification clause is broad enough to encompass claims brought by Bolger.

However, the language of Article 9(a) also limits the fees that Bolger can recover. Although the structure of the indemnification clause is somewhat convoluted, there are essentially two categories of claims and expenses for which Rexam is obligated to indemnify Bolger. The first is broad in its substantive scope—"any and all [liabilities, costs, etc.] . . . arising from the occupation, use, possession . . . or any . . . thing whatsoever done in or about the Premises"—but limited temporally by the qualifier "during any term of this Lease." (Rexam Trial Ex. 1.) The second category of claims and expenses is not limited in terms of time, but substantively covers only claims and expenses "arising from any failure by Lessee to perform any of the agreements, terms, covenants, or conditions of this Lease." (*Id.*) Together, these provisions mean that Bolger can recover attorneys' fees and costs under Article 9(a) only if they are related to a claim that arose during the term of the lease or are attributable to Rexam's breach of a term of the lease.

As the Court interprets Article 9(a), Bolger's fees and costs related to his claim for failure to maintain the premises are recoverable under either prong of the indemnity clause. As the Court found in its August 20, 2008, decision, Rexam was obligated under Article 5(c) of the

- 4 -

lease to maintain and repair the premises, including major structural replacements and repairs.
*See* Memorandum Opinion and Order of August 20, 2008 at 11-14. The Court found that Rexam
breached this duty. *See id.* at 14-22. In considering the roof of the facility, which represented the
lion's share of the repair damages, the Court specifically found that the roof required replacement
at the time that Rexam's lease expired on March 31, 2006. *Id.* at 18. Therefore, Rexam's failure
to maintain the premises definitely took place during the term of the lease, and it was a breach of
a specific term of the agreement (for which Rexam had to indemnify Bolger regardless of when
the claim "arose"). Consequently, under Article 9(a) Bolger is entitled to recover attorneys' fees
and costs associated with his claims for failure to maintain the premises.

Bolger's claim that Article 9(a) entitles him to recover fees and costs associated with
Rexam's willful holdover tenancy is less successful. By definition, Rexam's holding over after
the expiration of the lease could not have occurred "during any term of [the] Lease," and Bolger
cannot recover under that prong of the indemnification clause. In order to recover, Bolger must
be able to show that Rexam's continued occupation of the premises after the lease expired
constituted a "failure . . . to perform any of the agreements, terms, covenants, or conditions of
th[e] Lease." The language of the lease sets forth an initial twenty-five year term and provides
for renewals, but does not expressly state that Rexam has a duty to vacate or surrender the
premises upon the termination of the lease. (Rexam Trial Ex. 1.) Bolger relies heavily upon
*Horn & Hardart Co. v. Nat'l R.R. Passenger Corp.*, 659 F. Supp. 1258 (D.D.C. 1987), for the
proposition that a failure to surrender leased premises at the expiration of a lease is a violation of
the terms of the lease. However, aside from the fact that *Horn & Hardart* was a dispute based on
District of Columbia law rather than Illinois law, it is inapposite because the court in that case

- 5 -

found that the lease contained "a common end-of-term holdover clause" that specifically addressed the lessee's failure to surrender possession of the premises at the expiration of the lease. 659 F. Supp. at 1266. Similarly, the two Illinois cases that the Court has found holding that a failure to surrender possession violated the terms of a lease involved leases with express covenants requiring surrender. *See Oppenheimer v. Szulerecki*, 297 Ill. 81, 90, 130 N.E. 235 (1921); *Poppers v. Meager*, 148 Ill. 192, 35 N.E. 805 (1893). Here, as discussed above, the lease contains no explicit language regarding surrender of the premises at the expiration of the lease term.

Continuing his reliance on non-Illinois cases, Bolger cites several decisions in his reply brief for the proposition that "an implied duty to vacate is an inherent part of every fixed term lease agreement unless the parties explicitly express an intention to the contrary." *Allenfield Assocs. v. U.S.*, 40 Fed. Cl. 471, 486 (1998). Illinois courts have also stated that "[i]t is the duty of a tenant to surrender possession at the expiration of his lease." *See, e.g., Perry v. Evanston Young Men's Christian Assoc.*, 92 Ill. App. 3d 820, 825, 416 N.E.2d 340, 345 (1981). But a generalized duty to do or refrain from doing something can arise from a number of sources, including statutes and the common law; it is not necessarily a duty under a contract. And there are some implied duties—like the duty of good faith and fair dealing implied in every contract—that cannot, in and of themselves, give rise to a cause of action. *See Koehler v. First Nat'l Bank of Louisville*, 232 Ill. App. 3d 679, 683, 597 N.E.2d 1261, 1264 (1992) (discussing general rule that breach of covenant of good faith and fair dealing does not create a freestanding cause of action). Therefore, the fact that Rexam had a duty to surrender the premises does not necessarily mean that it was a term of the lease.

- 6 -

Notably, in this case, when Bolger sought to terminate Rexam's possession of the premises and recover damages, his legal theories were forceful reentry and detainer and wrongful possession under Illinois common and statutory law rather than specific enforcement of an obligation under the lease. (Bolger's Answer & Counterclaim, ¶¶ 122-136.) Furthermore, the existence of a lease between the parties is not necessarily a prerequisite to a statutory action for double rent, as demonstrated by the Illinois Appellate Court's decision in *Grand Union Tea Co. v. Hanna* holding that a successor tenant could maintain an action for double rent against a wilful holdover tenant. 164 Ill. App. 570, 1911 WL 2829, at *3-4 (1911). The successor tenant had standing to pursue the double rent claim because it had the right to possess the property, not because the holdover tenant had violated a term of his lease (to which the successor tenant was not a party). *Id.* Therefore, what little authority there is on the subject suggests that the obligation Bolger sought to enforce in his claims for possession and double rent was not an obligation that arose from the lease. Mindful of the general rule under Illinois law that leases are to be construed in favor of the lessee in ambiguous cases, *Sears*, 371 Ill. App. 3d at 1076, 864 N.E.2d at 874, the Court concludes that Rexam did not have an obligation *under the lease* to surrender possession at the termination of the lease period. Because Bolger's claim for possession of the premises and for double rent during the holdover period was not a claim arising out of a "failure . . . to perform any of the agreements, terms, covenants, or conditions of th[e] Lease," he cannot recover fees and costs associated with these claims under Article 9(a).

**B. Article 10(b)**

Article 10(b) of the lease provides:

> In the event that Lessor shall obtain possession by re-entry,
> dispossessory proceedings, legal or equitable actions or
> proceedings or other lawful means as a result of a default by
> Lessee, Lessor may make reasonable alterations and repairs of the
> Premises and may relet the Premises or any part thereof . . . for the
> remainder of the term hereof, or for such shorter or longer period
> as Lessor may determine . . . . Lessee will pay to Lessor all
> reasonable legal and other costs and expenses incurred . . . (i) in
> obtaining possession of the premises, (ii) in making all alterations
> and repairs as Lessor may reasonably deem necessary or advisable,
> (iii) in operating and maintaining the Premises or (iv) in re-letting
> the premises . . . .

(Rexam Trial Ex. 1.) In this case, it is clear that one aspect of this provision is satisfied: Bolger

did obtain possession of the premises by an action for forcible reentry. However, the language of

Article 10(b) imposes additional restrictions that doom Bolger's claim for attorneys' fees and

costs under this clause.

First, Article 10(b) applies only if Bolger obtains possession "as a result of a default by

Lessee." Article 10(a), which defines events of default, sets forth a number of scenarios, such as

bankruptcy or a failure to pay rent, that are clearly inapplicable in this case. Article 10(a) also

contains a catch-all provision providing for default "[i]f Lessee shall fail to perform or observe

any other requirement, or breach any other covenant or agreement, of this Lease and any such

failure or breach shall continue for 30 days after written notice thereof . . . ." (Rexam Trial

Ex. 1.) As discussed above, the Court finds that the lease in this case did not create an express

obligation on Rexam's part to surrender the premises upon expiration of the lease. Because

Rexam's holdover tenancy was not a failure "to perform or observe any other requirement, or

breach [of] any other covenant or agreement" of the lease, it was not an act of default under

- 8 -

Article 10(a). Consequently, Bolger's action to terminate Rexam's tenancy and regain possession of the premises is not covered by Article 10(b), and Bolger cannot recover the associated fees and costs under that provision.

Although it may be academic at this point, given the Court's finding above that Bolger is entitled to recover fees and costs associated with his claim for repairs under Article 9(a), the Court finds that Article 10(b) would not allow Bolger to recover fees and costs for his repair claim. As discussed above, Rexam failed to perform its duty under Article 5(c) to maintain and repair the premises during the course of the lease. Because Rexam failed to remedy this failure for more than thirty days after Bolger provided written notice on February 27, 2006, that he wanted Rexam to "correct the maintenance deficiencies at the property" (Bolger's Trial Ex. 9.), Rexam was arguably in "default" as that term is defined in Article 10(a). What is lacking, however, is a causal connection between the default and Bolger's dispossessory proceedings. Here, the docket sheet is dispositive. Bolger's original counterclaim for possession of the premises was based on the theories of wrongful possession and forcible reentry and detainer. (Bolger's Answer & Counterclaim, ¶¶ 122-136.) Only after this Court granted summary judgment on the issue of Rexam's right to occupy the premises did Bolger amend his counterclaim to add a third count for repairs based on Rexam's maintenance obligations under the lease. (Bolger's Amended Counterclaim, ¶¶ 161-169.) Therefore, although Rexam's failure to maintain the premises was an "event of default" under Article 10(a)(vi), Bolger did not obtain possession "as a result" of the default, as required by Article 10(b). Consequently, no fees are recoverable under this provision.

## C. Article 10(d)

Article 10(d) of the lease provides:

> In the event of the happening of an Event of Default other than the
> non-payment of rent . . . if Lessor at any time is required to pay, or
> elects to pay, any sum of money, by reason of such Event of
> Default, or if Lessor is required or elects to incur any expense,
> including reasonable counsel fees, in instituting, prosecuting or
> defending any action or proceeding instituted by reason thereof, the
> sum or sums so paid or incurred by Lessor . . . shall be due and
> payable by Lessee . . . .

(Rexam Trial Ex. 1.) As discussed above, the Court finds that Rexam's failure to surrender the premises at the expiration of the lease was not an "act of default" under Article 10(a) of the lease. Therefore, Bolger is not entitled to recover fees and costs associated with his wrongful possession and forcible reentry claims under Article 10(d). The Court has already found that Bolger is entitled to recover fees and costs associated with his claim for failure to repair the facility under Article 9(a) of the lease. The Court finds that Bolger is also entitled to recover those fees under Article 10(d). Rexam failed to perform its duty to maintain and repair the facility and continued to be in breach of that duty even after written notice from Bolger on February 27, 2006. In fact, Rexam never completed the necessary maintenance and repairs. *See* Memorandum Opinion and Order of August 20, 2008 at 14-15. Therefore, Rexam was in default under Article 10(a)(vi). Under Article 10(d), Bolger was entitled to recover "any expense, including reasonable attorney fees, [incurred] in instituting, prosecuting or defending any action or proceeding instituted by reason [of the default]." Bolger's legal action to recover the cost of repairs clearly meets that definition. Therefore, Bolger is entitled to recover costs and fees associated with his claim for repairs under Article 10(d) of the lease.

To summarize, the Court finds that Bolger is entitled to recover attorneys' fees and costs associated with his claim for repairs to the premises under both Article 9(a) and Article 10(d) of the lease. The Court finds that Bolger cannot recover attorneys' fees and costs associated with his wrongful possession and forcible reentry claims under any of the three lease provisions he relies upon. The Court's finding that Bolger is not entitled to any fees for these claims obviates the need to address Rexam's argument that the Illinois penalty statute for holdover tenants provides an "exclusive" remedy, precluding an award of fees. Therefore, the Court proceeds to consider the amount of fees and costs that Bolger can recover under the lease.

## D. Amount of Fees and Costs

The parties' briefing of this issue is not particularly helpful, as both sides rely heavily on cases interpreting federal fee-shifting statutes rather than contractual fee provisions, which are analyzed differently. *See Medcom*, 200 F.3d at 521. Under Illinois law, "[w]hen a contract calls for the shifting of attorney fees, a trial court should award all reasonable fees," and "the fact that the court did not grant [a party] the total amount of its [claim] does not alter the fee-shifting agreement." *Esker & Sons*, 325 Ill. App. 3d at 282, 757 N.E.2d at 1277. Bolger argues that this means he is entitled to recover all of his fees and that the Court should not "parse" his fees and costs by issue. However, the Court believes that Bolger is conflating two distinct concepts. On the one hand, where all of a party's claims are covered by a fee-shifting agreement and the party succeeds on some claims and not on others, or recovers only some of what she seeks, a court should not reduce the party's fee recovery in proportion to her success at trial. That is the principle expressed by cases like *Esker*. However, it is a different matter when some claims are

- 11 -

covered by a contractual agreement—like Bolger's claims based on Rexam's failure to maintain and repair the facility—and others are wholly outside of that fee-shifting agreement—like Bolger's claims for forcible reentry and wrongful possession. In the latter case, the Court is not denying fees because some claims succeeded while others failed, but because some claims were never within the fee agreement to begin with.

Applying this distinction to Bolger's motion for fees and costs, the Court finds that Bolger is entitled to all reasonable fees and costs associated with his claim for failure to repair and maintain the premises even though he was not entirely successful at trial. Conversely, even though Bolger succeeded on his wrongful possession and forcible reentry claims, he is not entitled to any of his fees and costs attributable directly to those claims because they were not covered by any of the fee-shifting provisions contained in the lease. Rexam's argument that Bolger is precluded from recovering any fees because he failed to completely break down all fees by claim and topic fails for two reasons. First, Rexam relies on the Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and its progeny, which deal with statutory fee-shifting provisions and not contractual agreements to pay fees, which are subject to a different, less particularized analysis. *See Medcom*, 200 F.3d at 521. Second, Rexam's argument ignores the reality that many fees and expenses are intertwined and that specific itemization is a practice that is expensive and unnecessary in a contractual fee-shifting agreement. Following the Seventh Circuit's precedent in *Medcom*, the Court will not engage in "a detailed, hour-by-hour review" of Bolger's fees and costs. 200 F.3d at 521. The Court finds that the more practical solution is to award Bolger all of his attorneys' fees incurred after October 11, 2007, when Bolger amended his counterclaims to include a claim based on Rexam's duty to repair. Prior to that date,

Bolger's fees were not related to this compensable item. After the counterclaim was amended, the two sets of claims were intertwined, such that it is not practical for the Court to attempt to determine which fees were devoted to which claims.[2] The Court will also award Bolger all of his reasonable costs and expenses incurred after that date, excluding those costs that are on their face related only to Bolger's claim for double rent.

## E.    Specific Fees and Expenses

Rexam has not contested the reasonableness of Bolger's attorneys' fees. The Court accepts Bolger's fees as reasonable in light of the fact that Bolger has in fact paid them and the fact that they are comparable to the fees incurred by Rexam. (Bolger's Br. at 14.) The Court awards attorneys' fees and expenses in the following amounts:

-    Fees to Wells, Jaworski & Liebman, LLP: $54,070 for fees incurred after October 11, 2007, based on Ex. A to the Declaration of Thomas Wells (Dkt. 147) plus $424.91 in expenses based on Ex. B to the Declaration of Thomas Wells.

-    Fees to Dowell Baker, P.C.[3]: $641,262.25 for legal services plus $48,969.71 in expenses based on the Declaration of Anthony E. Dowell, Ex. A (Dkt. 146). The amount of expenses does not include $7,640 attributable to expert witness Chris Hall, whose testimony was relevant only to rental value of the facility.

In conclusion, the Court finds that Bolger is entitled to recover a total of $744,726.87 in legal fees and expenses under the terms of the lease between the parties.

---

[2] The Court notes that Rexam has not attempted to do so either.

[3] The court awards fees incurred on October 9 and October 10, 2007, prior to the filing of the amended counterclaims on October 11, 2007, because these fees are specifically itemized as "Drafting Amended Counterclaims" and are therefore attributable to the claim for repairs. Dowell Declaration, Ex. A. (Dkt. 146.)

## II.   Taxable Costs Pursuant to Rule 54(d)

Under Federal Rule of Civil Procedure 54(d)(1), costs "other than attorney's fees . . .

should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).  28 U.S.C. § 1920 provides

that a judge "may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees of the

court reporter for all or any part of the stenographic transcript necessarily obtained for use in the

case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and

copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of

this title; (6) Compensation of court appointed experts . . . ."  The presumption is that the

prevailing party is entitled to costs unless the losing party makes "an affirmative showing that

taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th

Cir. 2005).  The Court addresses each subset of costs in turn.


### A.   Fees to the Clerk and Marshal Under 28 U.S.C. § 1920(1)

Bolger requests $412.00 in costs for service of process on Arthur Lietz ($40), Brian

Clancy and Scott Hrnciar ($110), Envision Environmental ($62), G&M Construction ($120), and

Brian Clancy on a second occasion ($80).  (Bolger's Mot. for Taxable Costs at 4.)  Bolger also

seeks the $350 fee he paid to remove this case from the Illinois state court.  (*Id.* at 3.)  Rexam

raises no objections to these costs, and the Court finds that Bolger is entitled to recover them.

The only costs requested here that were not already granted under the lease in Section I.E of this

opinion are the $40 fee for service on Arthur Lietz on December 12, 2006, and the removal filing

fee of $350.

- 14 -

**B.     Court Reporter Fees Under 28 U.S.C. § 1920(2)**

Bolger initially requested the costs of transcripts of the following depositions: Chris Hall

and Bob Hutton ($487.95); David F. Bolger ($267.45); Frank Brown, Diane Korizon, and Terry

Woods ($572.94); Arthur Lietz ($375.95); Brian Clancy ($442.87); John Hill ($586.20); Richard

Drewek ($806.70); Charles Scandroli ($415.30); John Myers ($1045.90); Brian Clancy

($1264.09); Frank Brown ($695.55); Edwin Carlson ($955.53); Gerald Norton ($680.20); Robert

Walsh ($920.40); and David F. Bolger ($1350).  Bolger also requested the cost of transcripts of

several hearings before the Court and transcripts of the trial ($1678.10).  (Bolger's Mot. for

Taxable Costs at 4-6.)

Rexam does not challenge the necessity of the transcripts but argues that Bolger's

recovery should be reduced for several reasons.  First, Rexam argues that some of Bolger's

deposition transcript fees exceed the maximum per-page rate in force at the time they were

obtained.  Rexam also objects to Bolger's requests for fees associated with expedited transcripts,

ASCII disks of transcripts, condensed transcripts, e-transcripts, deposition exhibit copies, postage

and delivery costs, administrative fees, and court reporter appearance fees.  In response, Bolger

has dropped his request for (1) per-page transcript fees for non-expedited transcripts in excess of

the maximum rate; (2) fees for deposition exhibits; (3) ASCII disk fees; and (4) "administrative

fees."  The Court considers the remaining issues in turn.


1.     Expedited Deposition Transcript Fees

Rexam argues that Bolger is not entitled to recover additional fees for expedited

transcripts of the depositions of Drewek, Myers, Walsh, Clancy, and Bolger.  "The additional

cost of expedited transcripts is not recoverable unless the [prevailing party] can show that the expedited transcripts were reasonable and necessary." *Winfrey v. City of Chicago*,

No. 96 C 1208, 2000 WL 1222152, at *2 (N.D. Ill. Aug. 22, 2000). Bolger argues that expedited transcripts were necessary for these particular depositions because they were related to motions and other court filings that were filed shortly after the depositions were taken. For example, Drewek and Myers were deposed in late November and early December 2007, and their testimony was used in preparing Bolger's Reply In Support of Motion to Set a Termination Date (Dkt. 80), filed December 14, 2007. Bondurant Decl. at ¶ 3. Similar circumstances applied to the January 15, 2008, deposition of Robert Walsh (whose testimony was reviewed prior to a January 18, 2008, motion to compel); the January 22, 2008, deposition of Brian Clancy (whose testimony was used in a brief filed February 8, 2008); and the May 22, 2008, deposition of David Bolger (whose testimony was used in preparing the May 29, 2008, final pretrial materials). Bondurant Decl. at ¶¶ 4-6. Because Bolger has provided evidence showing that expedited transcripts were reasonable and necessary in the course of litigation, he is entitled to recover these additional costs.

### 2. Condensed Transcripts

As Rexam notes, some courts have stated flatly that "[c]osts for condensed transcripts are not recoverable." *Winfrey*, 2000 WL 1222152, at *2. At the same time, other courts in this district have found that condensed transcript costs are recoverable, noting that under Local Rule 54.1 the losing party can be taxed for the cost of a deposition transcript plus one copy. *Angevine v. Watersaver Faucet Co.*, No. 02 C 8114, 2003 WL 23019165, at *4 (N.D Ill. Dec. 23, 2003).

- 16 -

Where the party seeking to recover costs elects to receive a condensed transcript in lieu of a full-sized copy, as was the case in *Angevine* and is the case here, it makes sense to award the cost of a condensed transcript, particularly where the condensed transcript is less expensive than an ordinary copy. *See* Second Dowell Decl., Ex. B (cost of condensed transcripts, where applicable, was $25-30—less than the $.83/page copy charge allowed under LR 54.1). Therefore, the Court finds that Bolger is entitled to recover the cost of condensed transcripts.

### 3. Incidental Deposition Costs

Rexam argues that Bolger is not entitled to incidental costs associated with the depositions, such as court reporter attendance fees and shipping and handling charges. There is some support for Rexam's position. *See, e.g., Fletcher v. Chicago Rail Link, LLC*, No. 06 C 0842, 2007 WL 4557816, at *2 (N.D. Ill. Dec. 20, 2007). However, the Court relies on Judge Schenkier's thoughtful analysis and review of the case law in *Chemetall GMBH v. ZR Energy, Inc.*, holding that "fees incidental to a deposition and for court reporter attendance at depositions are generally recoverable." No. 99 C 4334, 2001 WL 1104604, at *25-26 (N.D. Ill. Sept. 18, 2001). In that case, the court specifically held that the prevailing party was entitled to attendance fees, shipping and handling, and binding and processing fees, noting that the Seventh Circuit in *Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995), found that such costs were properly taxable to the losing party. *Id.* The Court finds, therefore, that Bolger is entitled to recover these incidental costs.

### 4.  "E-Transcripts"

Rexam argues that Bolger cannot recover the cost of "e-transcripts," citing *Young v. City of Chicago*, No. 00 C 4478, 2002 WL 31118328, at *1 (N.D. Ill. Sept. 24, 2002). The Court does not see anything in Bolger's bill of costs that would match this description, other than the ASCII disks. As noted above, Bolger has abandoned his claim for the cost of the disks. Therefore, the issue is moot.

### 5.  Total Amount of Court Reporter Fees

As discussed above, Bolger originally requested a total of $12,523.63 for court reporter fees. Rexam disputed $4,553.72 of those fees. In response to Rexam's challenge, Bolger agreed that its bill of costs should be reduced to account for per-page fees in excess of the maximum rate, the cost of the ASCII disks, the cost of deposition exhibits, and administrative costs. Bolger then submitted a revised tabulation of its court reporter fees net of these amounts showing a total of $8,671.94 in deposition transcript fees in addition to the unchallenged cost of $1,678.10 for transcripts of court proceedings. (*See* Bolger's Reply in Support of Mot. for Taxable Costs at 1, Ex. A.) As detailed above, the Court rejects the remainder of Rexam's challenges to Bolger's deposition and trial transcript costs. Therefore, the Court finds that Bolger is entitled to recover a total of $10,350.04 under 28 U.S.C. § 1920(2).

In Section I.E of this opinion, the Court found that Bolger was entitled to recover most of these costs under the terms of the lease between the parties. The following taxable costs were not included in the amounts awarded pursuant to the lease because they were incurred prior to the amendment of Bolger's counterclaim and are in addition to any award under Section I.E of this

- 18 -

opinion: Deposition of Christopher Hall, 1/24/07 ($168.30); Deposition of Robert Hutton, 1/24/07 ($85.80); Deposition of David F. Bolger, 2/7/2007 ($174.90); Deposition of Frank Brown, 2/16/07 ($132.16); Deposition of Dianne Korizon, 2/16/07 ($177.59); Deposition of Terry Woods, 2/16/07 ($74.34); Incidental Costs Related to Brown, Korizon, and Woods Depositions, 2/16/07 ($29.79); Deposition of Arthur Lietz, 2/23/07 ($287.47); Deposition of Brian Clancy, 3/5/07 ($366.87); Deposition of John Hill, 5/15/2007 ($511.20). The total of these additional amounts is $2008.42.

## C.    Witness Fees Under 28 U.S.C. § 1920(3)

Bolger seeks to recover deposition attendance fees of $50 for Arthur Lietz, Richard Drewek, Charles Scandroli, John Myers, and Brian Clancy, and $34 for Edwin Carlson. *See* Second Dowell Decl. at ¶ 7, Ex. C. Bolger seeks trial expenses of $548.84 for witness Ben Guido, $934.59 for Edwin Carlson, $1640.00 for Christopher Hall, and $1,375.51 for Gerald Norton. *Id.* Finally, Bolger seeks $2,600 in costs incurred in responding to discovery directed at his experts, Christopher Hall and Edwin Carlson. *Id.*

Rexam's objections to Bolger's requests are twofold. First, Rexam argues that Bolger cannot recover lodging costs in excess of the maximum rate of $188.00 per night set by the General Services Administration. While courts can refuse to award lodging costs above the maximum amount, the regulations governing subsistence allowances (which are incorporated into the standard governing witness per diem expenses) contemplate higher rates when special events such as conventions contribute to a scarcity of lodging, suitable accommodations are not available nearby, or the costs saved by finding more affordable lodging would be consumed by

the expenses of transportation to and from the courthouse. *See Perry v. U.S. Dept. of Energy*, No. 05 C 3634, 2008 WL 161679, at *2 (N.D. Ill. January 14, 2008). Bolger's counsel has submitted a declaration substantiating the fact that several of the listed factors were present at the time this case went to trial, including a major convention, a paucity of reasonably-priced hotel rooms in the downtown Chicago area, and a lengthy commute from more affordable hotels near the airport. Bondurant Decl. at ¶ 7. Therefore, the Court finds that Bolger is entitled to recover his witnesses' actual costs of attendance at trial, including their actual lodging costs.

Rexam's second argument is that Bolger should not be allowed to recover costs attributable to expert witness Ben Guido because his testimony related only to an issue—Rexam's liability for repairs to the facility's rail spur—on which Bolger lost. In order to recover witness fees, a party must show that the witness's testimony was "relevant, material, and reasonably necessary to the case." *Gordon v. Castle Oldsmobile and Honda, Inc.*, 157 F.R.D. 438, 441 (N.D. Ill. 1994). In "mixed result" cases such as this one, where the prevailing party has won "the substantial part" of the litigation but not every claim, the trial court has "especially broad discretion" to award or deny witness costs. *E.E.O.C. v. Wal-Mart Stores, Inc.*, No. 99 CV 106 DRH, 2000 WL 1162029, at *2 (S.D. Ill. June 29, 2000). In this case, the Court finds that Guido's testimony was relevant—indeed dispositive—on the issue of Rexam's liability for repairs to the railroad tracks on the leased premises. It was only on the basis of Guido's testimony that the Court was able to determine that Rexam was in fact not liable because the standards for rail construction had changed in such a way that the tracks would need to be replaced regardless of their condition. *See* Memorandum Opinion and Order of August 20, 2008 at 18-19. Under the circumstances, the Court finds that an award of costs related to Guido's court appearance is

appropriate because his testimony was highly relevant and necessary to the determination of the claim, even though Bolger did not prevail on the specific item of damages on which Guido testified.

For the reasons set forth above, the Court finds that Bolger is entitled to recover all of his witness fees under 28 U.S.C. § 1920(3). The total amount of these fees is $7,382.94. (Bolger's Mot. for Taxable Costs at 6-7.) The only witness fees not already awarded pursuant to the lease are those associated with expert witness Chris Hall, who testified regarding the fair market rental value of the premises, and the $50 appearance fee for Mr. Lietz, which was incurred prior to October 2007. Bolger seeks $1,640 for the cost of Mr. Hall's trial attendance and $1,250 in fees paid to Mr. Hall related to expert discovery. Therefore, $2,940 should be awarded to Bolger in addition to the amounts already awarded in Section I.E of this opinion.

### D.     Fees for Copies under 28 U.S.C. § 1920(4)

Finally, Bolger seeks $2,398.35 in costs that it paid for copies of documents provided by third-party subpoena respondent Envision Environmental. Bolger is "entitled to recover the costs for making necessary copies of necessary documents," and "[c]opying documents for production in discovery is necessary and recoverable." *Ochana v. Flores*, 206 F. Supp. 2d 941, 946 (N.D. Ill. 2002). In this case, Bolger had to pay for the copies in order to obtain the third-party discovery it needed for use at trial. Therefore, this is not a case where a party seeks to recover for unnecessary in-house copies that are made merely for an attorney's convenience. The circumstances surrounding the creation of the copies likewise refute Rexam's argument that the price per page was excessive. Although courts have held that $.25 or even $.20 per page is an

excessive rate, *see Ochana*, 206 F. Supp. at 946, those courts were considering charges for in-house copying. In this case, all of the copying charges are attributable to a document production from Envision Environmental in which Envision sent the documents to an outside copy center to be duplicated at Bolger's cost. Bondurant Decl. at ¶ 8. As Bolger notes, courts in this district have approved the same $.25/page rate for black-and-white copies that Bolger was charged here. *Vito & Nick's, Inc. v. Barraco*, No. 05 C 2764, 2008 WL 4594347, at *5 (N.D. Ill. Oct. 10, 2008).

Rexam also argues that Bolger should be denied the enhanced costs of oversize and color copies. Rexam is correct that courts have denied recovery for "unnecessary" color and oversize copies. *See, e.g., Chemetall*, 2001 WL 1104604, at *33. In *Chemetall*, the court denied costs associated with providing each juror with color and oversize copies of documents within a trial binder. *Id.* In this case, the only non-standard copies were obtained for review by counsel and included documents such as blueprints of the facility showing its layout and the positioning of the disputed railroad spur. *See* Second Dowell Decl., Ex. D. The Court finds that these enhanced copies were reasonable and necessary. The Court also finds that Bolger's claim for delivery charges is reasonable. According to Bolger's attorney's declaration, Envision agreed to produce the documents, which totaled 17,000 pages, on November 26, 2007. Bondurant Decl. at ¶¶ 8, 9. The "ship date" listed on the copy center's invoice is December 17, 2007. Second Dowell Decl., Ex. D. Depositions of Rexam's representatives were scheduled to begin in mid-January. Bondurant Decl. at ¶ 9. Under the circumstances, it was reasonably necessary for Bolger to expedite the delivery of the documents in order to facilitate review in advance of the depositions.

The Court finds that Bolger is entitled to all $2,398.35 in copying costs associated with document production by third-party subpoena respondent Envision Environmental under 28 U.S.C. § 1920(4). This amount was included in the expenses awarded to Bolger pursuant to the lease in Section I.E of this opinion.

### E. Total Taxable Costs

The Court finds that Bolger, as the prevailing party in this case, is entitled to recover a total of $20,893.33 pursuant to 28 U.S.C. §§ 1920(1)-(4). Due to the overlap between Bolger's claim for attorneys' fees and expenses under the lease and his claim for costs under Federal Rule of Civil Procedure 54(d)(1), most of the taxable costs were included in the Court's award of fees and expenses in Section I.E above. The total additional award of costs, therefore, is $5,338.42.

## III. Conclusion

The Court finds that Bolger is entitled to recover $744,726.87 in legal fees and expenses under the terms of the lease between Bolger and Rexam. The Court finds that Bolger is entitled, as the prevailing party in this litigation, to recover $20,893.33 in taxable costs under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. §§ 1920(1)-(4). Because $15,554.91 of Bolger's costs is recoverable under both the lease and the federal fee-shifting provisions, the Court counts this amount only once. The total amount awarded is therefore $750,065.29. Rexam's obligation to pay this sum to Bolger shall be stayed pending appeal in accordance with the Court's ruling in

open court on November 10, 2008, provided that Rexam increases the amount of its supersedeas bond by posting an additional sum equal to 120% of this judgment.

**ENTER ORDER:**

**MARTIN C. ASHMAN**

Dated: November 25, 2008.                    United States Magistrate Judge